UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-3786(DSD/TNL)

SEIU Local 26,

        Plaintiff,

v.                                                    **ORDER**

Kellermeyer Bergensons Services, LLC,

        Defendant.


      Justin D. Cummins, Esq. and Cummins & Cummins, PLLP, 1245 International Centre, 920 Second Avenue South, Minneapolis, MN 55402, counsel for plaintiff.

      Robert C. Castle, Esq. and Fox Rothschild, LLP, Campbell Mithun Tower, 220 South Ninth Street, Suite 2000, Minneapolis, MN and Stephen L. Berry, Esq. and Paul Hastings LLP, 695 Town Center Drive, Seventeenth Floor, Costa Mesa, CA 92626, counsel for defendant.


      This matter is before the court upon the motion for judgment on the pleadings by plaintiff SEIU Local 26. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies the motion and dismisses the matter without prejudice.


## BACKGROUND

      This labor dispute arises out of a contract between plaintiff SEIU Local 26, an unincorporated labor organization representing employees in the property services industry (Union), and defendant Kellermeyer Bergensons Services, LLC (KBS), an employer. In the fall of 2014, the Union informed KBS that it intended to organize

KBS's janitorial employees in Twin Cities.  In November 2014, the parties entered into a Memorandum of Agreement (Agreement), which established the manner in which the Union could solicit KBS employees to join the Union.  Agreement, Compl. Ex. A ¶ 2.

The Agreement acknowledges that employees have "the right to form or select any labor organization to act as their exclusive representative for the purpose of collective bargaining with their employer, or to refrain from such activity." Id. ¶ 3.  KBS agreed to adopt a neutral position regarding the unionization of its employees, while maintaining the right to "emphasize its own virtues as a company." Id. ¶ 4.  KBS also agreed to provide the Union with:  (1) access to the workplace for purposes of meeting with employees; (2) a list of all employees including their job classifications, job-site location, and telephone numbers; and (3) addresses of non-opt-out employees to be used for disseminating Union organizing information. Id. ¶¶ 5-6.

The parties consented to a card verification procedure to determine whether a majority of eligible employees signed union cards during the organization campaign. Id. ¶ 7.  Under this procedure, arbitrators Richard John Miller or Jeffrey Jacobs, or another "mutually acceptable neutral party" were authorized to determine whether the majority of employees submitted union cards. Id.  The arbitrators had the power to "resolve any disputes that may arise about the signed cards or petitions." Id. ¶ 8.  KBS

agreed that if a majority of its employees submitted union cards, it would recognize the Union as the exclusive collective bargaining representative of the employees and "commence collective bargaining immediately." Id. ¶ 11.

The parties agreed to submit any disputes over the "interpretation or application" of the Agreement to arbitration with Miller or, if he was unavailable, with Jacobs and to "comply with any order of the arbitrator, which shall be final and binding." Id. ¶ 13. The parties "consent[ed] to the entry of any order of the arbitrator as the order or judgment of the United States District Court for the District of Minnesota, without entry of findings of fact and conclusions of law." Id.

At some point, the parties submitted the union authorization cards to Jacobs for verification. On February 10, 2015, just hours before Jacobs issued his ruling, KBS purported to terminate the Agreement via e-mail, alleging that the Union engaged in unlawful tactics in securing employee signatures. Compl. Ex. B, at 2. The Union denied any wrongdoing, argued that the Agreement was not unilaterally terminable, and requested that Jacobs proceed with his determination. Id. at 1. Soon thereafter, Jacobs informed the parties, also via e-mail, that "a majority of employees in the appropriate bargaining unit has chosen the Union, SEIU #26 to represent them as their collective bargaining representative." Id. Jacobs further noted that the termination provision did not apply

3

under the circumstances and concluded that the Agreement is "still valid and binding on the parties." Id.  KBS responded that Jacobs exceeded his authority and that it would not abide by his ruling. Greene Decl. Ex. A, at 1.  Jacobs replied:  "I was asked to make a decision and I made it."  Id.

KBS maintains that it terminated the Agreement and refuses to comply with the arbitration award.  KBS has not filed any action to vacate, modify, or correct the arbitration award.  KBS did, however, file an unfair labor practice charge with the National Labor Relations Board, alleging that the Union coerced KBS employees to sign union cards.  Compl. ¶ 19; Answer ¶ 19.  The NLRB dismissed the charge.  Compl. ¶ 20; Answer ¶ 20.

On October 1, 2015, the Union filed this suit under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and the Federal Arbitration Act (FAA), 9 U.S.C. § 9, alleging breach of contract and seeking enforcement of Jacobs' order.  In its answer, KBS raised several affirmative defenses, including fraudulent inducement and termination of the Agreement.  ECF No. 5, at 7 ¶¶ 1-4.  The Union now moves for judgment on the pleadings.

**DISCUSSION**

## I.   Standard of Review

The same standard of review applies to motions under Federal Rules of Civil Procedure 12(c) and 12(b)(6).  Ashley Cty., Ark. v.

4

<u>Pfizer, Inc.</u>, 552 F.3d 659, 665 (8th Cir. 2009).  Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim.  <u>Iqbal</u>, 556 U.S. at 678 (citation and internal quotation marks omitted).

## II.  Waiver

As a threshold matter, the Union argues that KBS waived any objection to the arbitration award in the Agreement itself and by failing to seek vacatur of the award.

As noted, the parties consented to "the entry of any order of the arbitrator as the order or judgment of the United States District Court for the District of Minnesota, without entry of findings of fact and conclusions of law."  Compl. Ex. A ¶ 13.  The Union argues that this consent constitutes waiver of any challenges

5

to the award, including, apparently, waiver of the right to seek vacatur.  The court disagrees.  Although the consent provision may obviate the need to move to confirm an arbitration award, it does not expressly prohibit a party from challenging the award or seeking vacatur.

Nor is the court convinced that KBS waived its right to challenge the award by not moving to vacate.  "The failure to file a timely motion to vacate an award ... typically bars a party from later raising any defenses to the confirmation of the award that could have been raised in the vacation motion."  Sheet Metal Workers Int'l Ass'n, Local Union No. 36 v. Systemaire, Inc., 241 F.3d 972, 975 (8th Cir. 2001).  However, waiver may not occur where the party challenging the award contests the validity of the underlying agreement.  See Corey v. New York Stock Exch., 691 F.2d 1205, 1212 (6th Cir. 1982) (holding that an arbitral award is binding on the parties, absent the filing of a motion to vacate, modify or correct the award, "[u]nless [the parties] challenge the underlying contract to arbitrate....").  The Eighth Circuit Court of Appeals has not directly addressed the issue.

The facts presented here are unique and do not fall squarely within any of the authorities the parties cite.  The so-called arbitration in question was not a typical proceeding in that it did not involve the parties' active participation or the formal

6

presentation of evidence.[1]   Rather, the proceeding involved submitting signed union cards to the arbitrator for verification. Jacobs simply counted the cards and determined whether a majority of employees agreed to the Union's representation.   Although KBS initially consented to the card verification process, it also arguably withdrew that consent before Jacobs issued the award by challenging the validity of the Agreement as a whole.   The more prudent course might have been to move to vacate Jacobs' ruling, but the court cannot conclude that a waiver occurred under the circumstances.

## III. Arbitrability of Matter

KBS does not challenge the card-check process itself, nor does it challenge Jacobs' determination that a majority of employees signed Union cards.   Rather, this case involves the broader questions of whether the Agreement is valid and enforceable and, if so, whether KBS terminated the Agreement.[2]   The court is without authority to decide these issues.

The arbitrator, rather than the court, decides whether a contract "as a whole" is valid.   Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967) (holding that

---

[1]   For present purposes, the court need not determine whether the card verification procedure qualifies as an arbitration.

[2]   Neither party disputes that these issues fall within the Agreement's arbitration provision.

the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally"); Houlihan v. Offerman & Co., 31 F.3d 692, 695 (8th Cir. 1994) ("[A] claim of fraud in the inducement of the contract generally, because it does not go to the making and performance of the agreement to arbitrate, is properly left to arbitration.") (internal quotations and citation omitted).  In contrast, "if the claim is fraud in the inducement of the arbitration clause itself - an issue which goes to the making of the agreement to arbitrate - the federal court may proceed to adjudicate it." Prima Paint Corp., 388 U.S. at 403-04.

Here, for the first time, KBS challenges the validity and enforceability of the Agreement as a whole by claiming fraudulent inducement.  Under a plain reading of Buckeye and Prima Paint, that issue must be arbitrated and is not subject to judicial resolution.[3]

Whether KBS properly terminated the Agreement is likewise subject to arbitration.  It is apparent that Jacobs had no authority under the circumstances to decide this issue.  Jacobs' role was to verify whether a majority of KBS employees supported

---

[3] Prima Paint and Buckeye are FAA cases, but federal courts "have often looked to the [FAA] for guidance in labor arbitration cases."  Associated Elec. Coop., Inc. v. Int'l Bhd of Elec. Workers, Local No. 53, 751 F.3d 898, 905 (8th Cir. 2014); see also Sound Check, Inc. v. Am. Fed'n of Television and Radio Artists, 204 F.3d 801, 804 (8th Cir. 2000) (applying Prima Paint to a labor contract and concluding that the dispute was subject to arbitration on that basis).8

union representation.   He was not asked, at the outset, to determine whether KBS terminated the contract.   Indeed, that issue arose only after the authorization cards had been submitted to Jacobs but before he concluded his review.   Based on the brief e-mail exchange by the parties, Jacobs concluded that KBS did not properly terminate the Agreement.   See Compl. Ex. B.   Jacobs did so contrary to the arbitration procedure set forth in the Agreement.

The Agreement includes a separate procedure for disputes over the "interpretation or application" of the Agreement.   Agreement ¶ 13.   Specifically, such matters "shall be submitted to expedited and binding arbitration with Richard John Miller serving as the arbitrator."   Id.   Jacobs was authorized to preside over such matters only in the event Miller was unavailable within fourteen days.   Id.   In this instance, neither party submitted the question of termination to Miller as their Agreement expressly required.   As a result, Jacobs exceeded his authority in purporting to decide the issue.

Under the rather unique circumstances presented, the court finds it necessary to sua sponte submit the entire matter to arbitration consistent with the Agreement.   See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 411 (1988) ("[I]nterpretation of collective-bargaining agreements remains firmly in the arbitral realm."). The court will dismiss the matter without prejudice, however, in the event issues remain post-

arbitration that would be appropriate for judicial review.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.    The motion for judgment on the pleadings [ECF No. 11] is denied;

2.    The case is dismissed without prejudice; and

3.    The court submits the matter to arbitration consistent with the Agreement.


Dated:  April 27, 2016


                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court

10